UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUNSAY GOWDY, | ) | Case No. 3:10CV1188 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| TERRY TIBBALS[1], Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

Petitioner Shaunsay Gowdy ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. # 1.  Petitioner also filed an amended/supplemental petition ("amended petition") and a Statement of Issues Presented for Review ("Statement of Issues").  ECF Dkt. #3, 13.  He seeks relief for alleged constitutional violations that occurred during his Erie County, Ohio Court of Common Pleas convictions for: complicity to commit felonious assault against a peace officer in violation of Ohio Revised Code ("ORC") §§ 2903.11(A)(2) and (D) and 2923.03(A)(2) with a firearm specification; complicity to commit felonious assault in violation of ORC §§ 2903.11(A)(2) and (D) and 2923.03(A)(2) with a firearm specification; complicity to commit intimidation of a witness in violation of ORC §§ 2921.04(B) and 2923.03(A)(2); complicity to commit tampering with evidence in violation of ORC §§ 2921.12(A)(1) and 2923.03(A)(2); complicity to improperly discharge a firearm at or into a habitation in violation of ORC §§ 2923.161(A)(1)(c) and 2923.03(A)(2), with a firearm specification; and complicity to commit the offense of having a weapon under disability in violation of §§ 2923.13(A)(3) and (B) and

---

[1]  Petitioner is housed at Mansfield Correctional Institution, where Terry Tibbals is the warden.  *See* www.drc.ohio.gov.  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Terry Tibbals as Respondent.

2923.03(A)(2), with a firearm specification. *Id*.

On September 27, 2010, Respondent Keith Smith, then Warden of Mansfield Correctional Institution ("MCI"), filed an answer/return of writ and Respondent Terry Tibbals, currently the Warden at MCI, thereafter filed a response to Petitioner's amended/supplemental petition. ECF Dkt. #s 11, 16.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the original and amended petitions and the Statement of Errors in their entirety with prejudice:

## I.    **SYNOPSIS OF THE FACTS**

The Sixth Appellate District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999). As set forth by the Ohio Court of Appeals, the facts are:

> The following pertinent evidence was adduced at the trial of appellant and his codefendant, Patrick Brown, who was also tried as a complicitor.
>
> During the early morning hours of January 8, 2006, Detective Daniel Lewis of the Sandusky Police Department, who was currently assigned to the Erie County Drug Task Force, and his wife were asleep in the front bedroom of their residence. At approximately 6:20 a.m., Lewis and his wife were awakened by the sound of gunshots. Lewis initially believed that someone was throwing rocks at the house, but his wife informed him of the fact that it was gunshots. A bullet came through the front window of the Lewis bedroom, passed through the bedroom door, struck the bedroom wall, and ended up on the closet floor in an adjoining bedroom.
>
> Detective Lewis immediately contacted the Sandusky Police Department. Officer James Desalle was the first to arrive at the scene. After speaking with Lewis and his wife and finding the bullet that came through the bedroom window, Desalle went outside to look for additional evidence. From the angle that the bullet came through the window and entered the door, Desalle determined that it came from a gun held by an individual standing on either a nearby alley or the "apron" of an entrance to an apartment complex across the street from the Lewis residence. When he crossed the street and stood on the apron, Desalle noticed a "skip mark" on the hood of the white vehicle that was used by Detective Lewis in performing his job as a member of the Erie County Drug Task Force.
>
> Because a witness told the police that she heard a gunshot and then "some individuals" running through the area of the apartment complex, law enforcement officers did a "sweep" of the parking lot and grounds, starting at that portion closest to the Lewis residence and heading toward Clinton Street,

which is located on the other side of the complex. According to Captain Charles Samms, there was a lot of frost in the area, especially on any objects that were on the ground or parking lot. However, as he walked between two of the apartment buildings, Captain Samms observed a cell phone on the ground that was not frost covered. The police took a photograph of the phone. It was then secured as evidence and delivered to the Ohio Bureau of Criminal Investigations ("BCI"), where it was determined that Patrick Brown's DNA was on this particular cell phone.

Investigators also discovered that the phone belonged to Patrick's brother, Cedric Brown, but Cedric claimed that he left the phone in Patrick's car. Four or five calls were made between 6:12 a.m. and 6:15 a.m. on January 8, 2006, from a second cell phone found in the possession of Patrick Brown to the cell phone found on apartment complex grounds. One call was made from the cell phone in the possession of Patrick Brown to appellant's cell phone during that same time frame. After 6:20 a.m., several calls were made from appellant's cell phone to the cell phone found on the apartment complex grounds.

Officer Eric Mohr was assigned to work the perimeter of the crime scene and was stationed at the intersection of Clinton and Taylor Streets. Mohr saw a green van coming from the north and heading south on Clinton. Approximately halfway down the block, the driver turned off his headlights, continued driving past "three or four houses," and stopped. Approximately one minute later, someone exited from the driver's side. Mohr walked over to the van and asked that individual for some identification. The man gave the officer a state I.D. card identifying him as Patrick Brown. Brown kept putting his hands into his pockets and getting loud. Because he refused to "quiet down," Officer Mohr arrested him for disorderly conduct. He subsequently arrested appellant, who was the passenger in the van, after Detective Max Jarrett, a lieutenant in the Sandusky Police Department, told Mohr that appellant was under house arrest. Several drug charges and a weapons charge were pending against Gowdy at that time. Both Jarrett and Detective Lewis were involved in the investigations leading to those charges.

When Detective Jarrett arrived at the Lewis residence, Officer Mohr, appellant, Patrick Brown, and the green van were at the scene. Officer Mohr told Jarrett that there was a gun holster in the van behind the driver's seat. At trial, Jarrett opined that such a holster could hold a .380 semiautomatic handgun. The detective took gunshot residue samples from both appellant's and Brown's hands. These samples were taken to the BCI where testing established that appellant had gunshot residue on his hands, but that Patrick Brown did not have gunshot residue on his hands. Appellant claimed, nonetheless, that he did not fire a gun on the morning of January 8, 2006.

The van was towed to the police department and processed by Special Agent Dan Winterick, who is employed by the BCI. Winterick took samples from the inside of the van's windows and door frames, obtained samples for DNA testing from the holster, collected Patrick Brown's black sweatshirt/jacket, and took the cell phone found in the van for analysis at the BCI. Testing showed that there was gunshot residue on the van's windows and door frames and on the jacket. The bullet recovered in the Lewis residence was also transported to the BCI. The shell casing of that bullet was not found.

Two days later, Jarrett learned that the recovered bullet was fired from a .380 semiautomatic or automatic pistol. Based upon this information, Jarrett believed that there was a good chance of finding the casing of the bullet in the area of the shooting. Therefore, he, Detective Helen Prosowski, Detective John Orzech, and Officer Kenneth Piotrowski, returned to the scene of the shooting. Detective Prosowski found a fired bullet in an area access the street from the Lewis residence. She also found a shell casing near a boat parked on that side of the street. The BCI determined that the bullet Prosowki found came from the same .380 semiautomatic or automatic pistol as the bullet fired into the Lewis residence. The shell casing did not match that weapon.

In addition to the foregoing evidence, the parties stipulated to the following:

"1.)     Shaunsay Gowdy was convicted in 2000 of an offense that would place him under disability from handling a weapon and he was not relieved from that disability on January 8, 2006."

"2.)     On January 8, 2006, Shaunsay Gowdy was under house arrest."

ECF Dkt. #11-8 at 3-7.

## II.     **PROCEDURAL HISTORY**

### A.     **State Trial Court**

In its January 2006 session, the Erie County, Ohio Grand Jury indicted Petitioner on complicity to commit felonious assault against a peace officer in violation of Ohio Revised Code (ORC) §§ 2903.11(A)(2) and (D) and 2923.03(A)(2) with a firearm specification; complicity to commit felonious assault in violation of ORC §§ 2903.11(A)(2) and (D) and 2923.03(A)(2) with a firearm specification; complicity to commit intimidation of a witness in violation of ORC §§ 2921.04(B) and 2923.03(A)(2); complicity to commit retaliation in violation of ORC §§ 2921.05(A)(C) and 2923.03(A)(2); complicity to commit tampering with evidence in violation of ORC §§ 2921.12(A)(1) and 2923.03(A)(2); complicity to commit improperly discharging a firearm at or into a habitation in violation of ORC §§ 2923.161(A)(1)(c) and 2923.03(A)(2), with a firearm specification; complicity to commit carrying a concealed weapon in violation of ORC §§ 2923.12(A)(2) and (G)(1) and 2923.03(A)(2); and complicity to commit the offense of having a weapon under disability in violation of §§ 2923.13(A)(3) and (B) and 2923.03(A)(2), with a firearm specification. ECF Dkt. #11-1 at 13-18.

After the defense rested at trial, the trial court granted Petitioner's Ohio Criminal Rule 29 motion for judgment of acquittal as to the count charging him with complicity to carrying a concealed weapon.  ECF Dkt. #12-2 at 414-416.  Following a trial, the jury found Petitioner not guilty of complicity to commit retaliation, but found him guilty of all of the remaining counts.  ECF Dkt. #11-1 at 20-31.  The trial court thereafter sentenced Petitioner on all of the convictions to a total of forty years of imprisonment.  *Id*. at 33-37.

**B.**    **Direct Appeal**

On October 6, 2006, Petitioner pro se filed a notice of appeal to the Ohio Court of Appeals for the Sixth District.  ECF Dkt. #11-1 at 38.  The State of Ohio filed a motion to dismiss the appeal because Petitioner failed to file a timely appellant brief.  *Id*. at 40.  Petitioner filed opposition to the motion, but on May 14, 2007, the appellate court granted the State's motion to dismiss Petitioner's appeal.  *Id*. at 42-45.

**C**.    **Ohio Appellate Rule 26(A) Application**

On May 24, 2007, Petitioner pro se filed an application pursuant to Rule 26(A) of the Ohio Rules of Appellate Procedure requesting that the Ohio appellate court reconsider the decision in his state criminal case.  ECF Dkt. #11-1 at 47.  He also filed a motion for the appointment of counsel.  *Id*. at 56.  The State of Ohio filed a response to the motion for reconsideration.  *Id*. at 59.  On June 28, 2007, the Sixth District Court of Appeals granted Petitioner's application for reconsideration in the interest of justice and to avoid dismissing cases on technical grounds.  *Id*. at 66.  The court also granted Petitioner's motion for the appointment of counsel and appointed him counsel.  *Id*.

**D**.    **Appeal**

On April 21, 2008, Petitioner, through counsel, filed a brief in support of his reinstated appeal, raising the following assignments of error:

> I.    THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT WITH RESPECT TO ALL OF THE COMPLICITY CHARGES.
>
> II.    THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT WITH RESPECT TO ALL OF THE CHARGES OF FELONIOUS ASSAULT.

III.    THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT SEPARATELY AS TO THE FELONIOUS ASSAULT CHARGES FOR THE REASON THAT SAID OFFENSES WERE COMMITTED WITH A SINGLE ANIMUS.

IV.    THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT SEPARATELY AS TO THE CHARGES OF FELONIOUS ASSAULT, INTIMIDATION OF A WITNESS, AND IMPROPERLY DISCHARGING A FIREARM AT OR INTO A HABITATION FOR THE REASON THAT SAID OFFENSES WERE ALL COMMITTED WITH A SINGLE ANIMUS.

V.    THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ECF Dkt. #11-2 at 1-27.

On January 30, 2009, the Sixth District Court of Appeals denied the appeal and affirmed the trial court's judgment of conviction.  ECF Dkt. #11-8 at 1-17.

**E.    Supreme Court of Ohio**

On March 12, 2009, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #11-8.  Petitioner, through counsel, filed a memorandum in support of jurisdiction, raising the following propositions of law:

Proposition of Law No. 1:    In order for the State to convict a defendant of complicity under R.C. 2923.03(A)(2), it must present evidence show[] that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal.

Proposition of Law No. 2:    While it is not necessary that the State either identify or charge an individual as the principal offender in order to obtain the conviction of a defendant as a complicitor, it is necessary that the State provide proof that a principal existed and that the principal is not the defendant.

Proposition of Law No. 3:    In order for the State to prove that a defendant charged with complicity shared the criminal intent of the principal, it is incumbent on the State to establish that there was a principal other than that defendant.

Proposition of Law No. 4:    While an indictment charging a defendant as a principal also charges that defendant as a complicitor where appropriate, the converse is not true and a defendant charged solely as a

-6-

|  | complicitor under R.C. 2923.03(A) does not charge a defendant as a principal. |
|---|---|
| Proposition of Law No. 5: | Where there is no evidence presented that a defendant had any knowledge of the presence of a person of a purported victim in the area in which the defendant is alleged to have discharged a firearm and there is no consequential harm resulting to the purported victim there can be no finding of the necessary animus that would permit a finding of felonious assault. |
| Proposition of Law No. 6: | Proof only of the fact that a firearm was randomly discharged into a house without proof that the alleged shooter intended to cause serious physical harm to someone in the house is insufficient to permit a guilty finding of felonious assault. |

ECF Dkt. #11-8 at 21-35.  On June 3, 2009, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #11-9 at 18.

## III.  28 U.S.C. § 2254 Petition

On May 19, 2010, Petitioner pro se executed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

> GROUND ONE:  Deprivation of Petitioner's Constitution[sic] Right to Due Process of Law when the Trial Court permitted a conviction in his case when there was clearly not sufficient evidence to do so.  As a result the Trial Court Abused its Discretion when overruling Petitioner's Motion to Acquit pursuant to Ohio's Criminal Rule 29, again depriving him of his Constitutional Right to Due Process of Law, Equal Protections Under the Law, and a Fair Trial as defined by the United States Constitution, Fourth, Sixth and Fourteenth Amendments.

> GROUND TWO:  The Trial Court erred in sentencing Petitioner separately on the felonious assault charges for reason(s) they were allied offenses of similar import perpetrated and committed as defined by Ohio Revised Code Section 2941.25; with one single animus and the identical course(s) of conduct.  This Claim also is inclusive of the merger of the felonious assault, intimidation of a witness, and improperly discharging a firearm at or into a habitation.

*Id.* at 3.  On the same day, Petitioner filed the Statement of Issues" document in which he asserted the following "Constitutional violation claims:"

> A.  The evidence was insufficient to establish guilty beyond a reasonable doubt with respect to all of the complicity charges.

-7-

B.   The evidence was insufficient to establish guilt beyond a reasonable doubt with respect to all of the charges of felonious assault.

C.   The Trial Court erred in sentencing Petitioner separately as to the felonious assault charges for reason they were allied offenses of similar import perpetrated and committed with one single animus and identical courses of conduct.

D.   The Trial Court erred in sentencing Petitioner separately as to the charges of felonious assault, intimidation of a witness, and improperly discharging a firearm at or into a habitation for the reason they were allied offenses of similar import perpetrated and committed with one single animus and identical courses of conduct.

E.   The verdict of the Jury was Against the Manifest Weight of Evidence.

ECF Dkt. #3.  On September 27, 2010, Respondent filed a return of writ.  ECF Dkt. #11.  On October 26, 2010, Respondent filed a supplement in the form of transcripts to state proceedings. ECF Dkt. #12.  On November 10, 2010, with this Court's approval to do so, Petitioner filed what he captioned an "amended" federal habeas corpus petition.  ECF Dkt. #13.  On March 28, 2011, Respondent, with Court permission, filed a response to the "amended" petition.  ECF Dkt. #16.  Respondent explained that its response to Petitioner's "amended" petition merely incorporated its prior return of writ since Petitioner's "amended" petition made no substantive changes to his original petition, but rather corrected errors in statements made by Petitioner in his original petition concerning state procedural matters.  *Id.*

## IV.   **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.   **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

-8-

**B.** **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

    (1)    whether the petitioner failed to comply with an applicable state procedural rule;

    (2)    whether the state courts actually enforced the state procedural sanction;

    (3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

    (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d

-9-

412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e.,

> were procedurally defaulted), are generally not cognizable on federal habeas
> review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the

Court's review of Petitioner's claims.

## <u>V</u>.  <u>STANDARD OF REVIEW</u>

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and

procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed

his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective

date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S.

1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in

violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. §

2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of

habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an
> *unreasonable application of*, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

-11-

court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

-12-

> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.   ANALYSIS

### A.   Noncognizability-Ground E of Statement of Issues – Manifest Weight of the Evidence

In Ground E of his Statement of Issues, Petitioner contends that the jury's verdict finding him guilty was against the manifest weight of the evidence. ECF Dkt. #3 at 2. The undersigned recommends that the Court dismiss this ground for relief because a claim that a conviction is against

-13-

the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Accordingly, Ground E of the Statement of Issues lacks cognizability and should be dismissed with prejudice.

### B.    Procedural Default

#### 1.    Ground for Relief Number Two in original and amended petitions and claims C and D in Statement of Issues - Sentencing Challenges

In Ground for Relief Number Two of his original and amended § 2254 petitions, Petitioner asserts that the state trial court committed error in sentencing him separately on the felonious assault convictions because they were allied offenses of similar import. ECF Dkt. # 1-1 at 11-14, ECF Dkt. #13 at 3. He alleges the same in claims C and D in his Statement of Issues. ECF Dkt. #3 at 2. Respondent contends that Petitioner has procedurally defaulted these claims because he failed to present them to the Supreme Court of Ohio. ECF Dkt. #11 at 19-21.

The undersigned recommends that the Court find that Petitioner has procedurally defaulted the above-referenced claims because he failed to present them to the Supreme Court of Ohio. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Further, a failure to present a federal habeas claim to a state's highest court for discretionary review, when that review is part of the ordinary appellate review procedure, results in a procedural default of that claim. *Id.* at 847-848.

-14-

Upon reinstatement of his direct appeal to the Sixth District Court of Appeals, Petitioner asserted the following assignments of error in his appellant brief relating to the instant claim:

> III.  THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT SEPARATELY AS TO THE FELONIOUS ASSAULT CHARGES FOR THE REASON THAT SAID OFFENSES WERE COMMITTED WITH A SINGLE ANIMUS.
>
> IV.  THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT SEPARATELY AS TO THE CHARGES OF FELONIOUS ASSAULT, INTIMIDATION OF A WITNESS, AND IMPROPERLY DISCHARGING A FIREARM AT OR INTO A HABITATION FOR THE REASON THAT SAID OFFENSES WERE ALL COMMITTED WITH A SINGLE ANIMUS.

ECF Dkt. #11-2 at 1-27.  However, before the Supreme Court of Ohio, none of Petitioner's propositions of law or his memorandum in support of jurisdiction mentioned sentencing errors or allied offenses of similar import.  ECF Dkt. #11-8 at 21-35.  Petitioner does discuss the issue of animus in those filings, but only with regard to the insufficiency of the evidence to prove felonious assault.  *Id.* at 33.  Petitioner presented two propositions of law before the Ohio Supreme Court that dealt with the required animus:

> Proposition of Law No. 5:   Where there is no evidence presented that a defendant had any knowledge of the presence of a person of a purported victim in the area in which the defendant is alleged to have discharged a firearm and there is no consequential harm resulting to the purported victim there can be no finding of the necessary animus that would permit a finding of felonious assault.
>
> Proposition of Law No. 6:   Proof only of the fact that a firearm was randomly discharged into a house without proof that the alleged shooter intended to cause serious physical harm to someone in the house is insufficient to permit a guilty finding of felonious assault.

*Id.* Petitioner's memorandum in support of jurisdiction discusses the animus issue with regard to the finding of his guilt on the felonious assault convictions but does not mention it in regard to sentencing.  *Id*. at 33-34.  Accordingly, the undersigned recommends that the Court find that he has procedurally defaulted his grounds for relief presented before this Court relating to sentencing issues

because he failed to present them to the Supreme Court of Ohio.

Petitioner can escape this procedural bar if he presents cause to excuse his failure to present these claims to the Supreme Court of Ohio and prejudice arising therefrom, or that a fundamental miscarriage of justice will result from failing to review the claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. Cause and Prejudice/Fundamental Miscarriage of Justice

The Court may excuse Petitioner's procedural default if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. However, Petitioner asserts no basis of cause for failing to raise these claims and no allegation of prejudice resulting therefrom. Moreover, while he concludes in his petition that a fundamental miscarriage of justice would result if these claims are not reviewed, he provides no detail as to this conclusion. ECF Dkt. #1-1 at 14.

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground for Relief Number Two of his original and amended § 2254 petitions, and claims C and D of his Statement of Issues. ECF Dkt. #1-1 at 11, ECF Dkt. #3 at 2, ECF Dkt. #13 at 3.

### C. Merits Analysis

#### 1. Ground for Relief Number One in original and amended § 2254 petitions and Claim A in Statement of Issues -Complicity

In Ground for Relief Number 1 in his original § 2254 petition and amended petition, as well as in Ground A of his constitutional violation claims in his Statement of Issues, Petitioner asserts that the evidence was insufficient to establish beyond a reasonable doubt that he was guilty of complicity. ECF Dkt. #1-1 at 8-11, ECF Dkt. #3 at 2, ECF Dkt. #13 at 3. Petitioner explains that his "main catalyst and engine mechanism of law is that he was charged in EACH count of his indictments as a complicitor and not as the principle[sic] offender."

-16-

ECF Dkt. #1-1 at 9.  Plaintiff contends that an "intrinsic dilemma" existed and he was deprived of his constitutional rights because his co-defendant, Patrick Brown, was acquitted of all charges, which left Petitioner "now to the deliberation of the jury solely, as what turned out to be, the Principal Offender and not the Complicitor as assigned in his indictment." *Id.* Petitioner argues that the Ohio complicity statute, Ohio Revised Code section 2923.02(A)(2), "is a mis-interpretation which merits an Evidentiary Hearing whereby the specific and explicitory language can be dissected to understand that the meaning of subsection (F) only applies if such information regarding the principal is made in the charging instrument." *Id.* at 9-10.

The undersigned recommends that the Court find that to the extent that Petitioner asserts this claim solely as a matter of state trial court error or interpretation of the Ohio complicity statute, such a claim is not cognizable in federal habeas corpus review.  The Sixth District Court of Appeals believed that Petitioner was merely alleging an error in the application of the state complicity statute, section B of Ohio Revised Code 2923.03:

> In his first assignment of error, appellant urges that insufficient evidence was offered at trial to establish the element of complicity as to each of the charged offenses.  Appellant's argument on this issue, however, involves only the fact that no one was prosecuted as the principal offender.  Based upon this fact and the fact that the jury found that Patrick Brown was not guilty, appellant contends that he was impermissibly convicted as the principal offender; or that he was convicted of being a complicitor to himself.  We disagree.  Specifically, R.C. 2923.03(B) states: "It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender."  See, also, *State v. Graven* (1977), 52 Ohio St.2d 112, 115-116; *State v. Beehive Ltd. Partnership* (1993), 89 Ohio App.3d 718, 723.  In other words, the state was not required to either identify or charge an individual as the principal offender in order to obtain the conviction of appellant as a complicitor.  Accordingly, appellant's first assignment of error is found not well-taken.

ECF Dkt. #11-8 at 8.  Further, Petitioner asserts in his federal habeas corpus petition that the trial court abused its discretion in overruling his motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.  ECF Dkt. #1-1 at 8-9.

It is well-settled that "a state court's interpretation of state law, including one

announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (state courts are the final arbiters of state law). Federal habeas relief does not lie for perceived errors of state law and a federal court may review a state prisoner's federal habeas corpus petition only on the ground that his confinement violates the Constitution, law or treaties of the United States, and not "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d (1984); *see also Estelle*, 502 U.S. at 67–68.

Nevertheless, even reviewing the merits of Petitioner's sufficiency of the evidence claim as to the complicity charges on a federal constitutional level, the undersigned recommends that the Court find no merit to his assertion.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). On federal habeas corpus review, the District Court cannot weigh the credibility of the witnesses. *Walker v. Engle*, 703 F.2d 959, 969. Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), *and Walker,* 703 F.2d at 969. In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. The inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Moreover, in determining whether the state court's determination was objectively unreasonable, the Court must first determine

-18-

whether the evidence was sufficient to convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.

As quoted above in Section VI(C)(1), the Ohio appellate court outlined the pertinent state law and evidence and reasonably concluded that sufficient evidence was presented to prove that Petitioner was guilty beyond a reasonable doubt of complicity.  ECF Dkt. #11-8 at 8.  The appellate court noted that the only issue that Petitioner presented on appeal was that he was impermissibly convicted as the principal offender or as being a complicitor to himself since no one was prosecuted as the principal offender and Patrick Brown was not guilty.  *Id.*  The Ohio appellate court cited caselaw and Ohio Revised Code 2923.03(B), in finding that the State of Ohio was not required to identify or charge an individual as a principal offender in order to obtain Petitioner's conviction as a complicitor.  *Id.*

Before this Court, Petitioner makes the same assertion that he presented before the Ohio appellate court, although he couches the assertion in federal constitutional language.  He contends that he was deprived of his federal constitutional rights to due process and a fair trial because he was charged in the indictment under Ohio Revised Code section 2923.03(A)(2) only as a complictor and was therefore not on notice that he had to defend against prosecution as a principal offender.  ECF Dkt. #1 at 9.  Petitioner laments that when Patrick Brown was found not guilty on all charges, Petitioner was found guilty as the principal offender which was contrary to law because he was only charged as a complicitor.  *Id.*  Petitioner concludes that he would have had to be charged in an alternative indictment count as a principal in order to provide him with his federal constitutional right to a fair trial and notice.  *Id.* at 10-11.

Petitioner further asserts that the Sixth District's holding in his case that the State of Ohio was not required to identify or charge an individual as a principal in order to convict him was contrary to federal law "with respect to his Due Process Entitlements." *Id*. at 11.

The Court should find no merit to Petitioner's assertion. Ohio Revised Code section 2923.03, the section under which Petitioner was indicted and convicted, states in relevant part that:

> 2923.03 Complicity
>
> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
>> (2) Aid or abet another in committing the offense;
>
> (B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.
>
> (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.
>
> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Ohio Rev. Code. § 2923.03.  As found by the Ohio appellate court in this case, Section B of the statute specifically counters Petitioner's assertion that because Patrick Brown was acquitted, Petitioner could not be convicted as a complicitor.  Both Ohio and federal courts have found as much. *See Standefer v. United States,* 477 U.S. 10, 20, 100 S.Ct. 1999, (1980); *Hess v. Money*, No. 93-4395, 23 F.3d 407(Table), 1994 WL 174197, at *2 (6th Cir. May 6, 1994), unpublished ("Furthermore, a conviction for aiding and abetting does not require that the principal be tried and convicted, or even that the principal be identified. *United States v. Mann*, 811 F.2d 495, 497 (9th Cir.1987)"), citing *State v. Graven*, 52 Ohio St.2d 112, 369 N.E.

-20-

2d 1205 (1977).  .

Moreover, as pointed out by Respondent, sufficient evidence was presented at trial to lead a rational trier of fact to conclude that Petitioner was guilty beyond a reasonable doubt of the complicity charges.  The prosecution presented evidence that during the time of this shooting, the victim was a police officer who was part of a drug task force and lead investigator in executing a search warrant on Petitioner's home where they found drugs and he presented testimony to the grand jury that led to charges against Petitioner for drug trafficking and possession and weapon under disability charges.  ECF Dkt. #12-1 at 196-199. The prosecution also presented evidence showing calls from Petitioner's cell phone to the co-defendant shortly before the shooting and calls from Petitioner's cell phone to a cell phone found near the scene of the shooting which had the DNA of Petitioner's co-defendant on it. *Id.* at 468; ECF Dkt. #12-2 at 16-20.  The prosecution presented evidence that Petitioner returned to the scene of the shooting shortly thereafter when he and Patrick Brown were observed by a police officer in a van that drove down the victim's street, turned off the headlights, and coasted to a stop in front of another house.  *Id.* at 235-240.  A police officer testified that he observed the van stop and saw no one exit the van for approximately a minute. *Id.* at 237.  He then observed the driver of the vehicle, Patrick Brown, exit the vehicle and walk almost up to the porch of the house near the victim's when he turned back around and met the officer on the sidewalk, where he was questioned about the shooting.  *Id.*  As the officer questioned Mr. Brown, he testified that Mr. Brown kept putting his hands in his pockets and began getting loud as the officer was gathering information.  *Id.* at 238.  The officer arrested Mr. Brown for disorderly conduct and placed him in the cruiser.  *Id.*

The officer thereafter placed Petitioner in handcuffs after learning his identity and after being informed by radio that Petitioner was on house arrest.  ECF Dkt. #12-1 at 255.  The officer also observed a gun holster in the van's backseat directly behind the driver.  *Id.* at 242. Gunshot residue turned up on the windows and doors of the van and  Petitioner had gunshot residue on his hands.  *Id.* at 396-397, 501-505.  In addition, evidence was presented showing

-21-

that the offense was actually committed as testimony revealed that gunshots were heard, a window in the residence was broken and a bullet was found inside the victim's house, and a gunshot dent mark was found on the hood of his work vehicle. *Id*. at 182-184, 191-196, 281.

Based upon this evidence, the undersigned recommends that the Court find no merit to Petitioner's Ground for Relief Number 1 in his original § 2254 petition and amended petition, as well as in Ground A of Petitioner's Statement of Issues. ECF Dkt. #1-1 at 8-11, ECF Dkt. #3 at 2, ECF Dkt. #13 at 3.

## 2. <u>Ground B of Statement of Issues- Felonious Assault</u>

Petitioner also challenges the sufficiency of the evidence against him as to the felonious assault charges in Ground B of his Statement of Issues. ECF Dkt. #3 at 2. In addressing this assertion, the Ohio appellate court found:

> In his second assignment of error, Gowdy argues that the prosecution produced insufficient evidence to establish, beyond a reasonable doubt, the two charges of felonious assault. In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in the record in order to determine whether such evidence, if believed, would support a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; *State v. Wilson*, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298 ¶ 33. The material inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* supra, at 274. Finally, in considering the sufficiency of the evidence, a reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. *State v. Benge*, 75 Ohio St.3d 136, 143, 1996-Ohio-227.

> Under R.C. 2903.11(A)(2), felonious assault occurs when a person knowingly causes or attempts to cause physical harm to another "by means of a deadly weapons or dangerous ordnance." In the present case, appellant claims that because no evidence was offered to establish that he or the shooter knew that someone was in the Lewis residence at the time the shooter fired a .380 automatic pistol into that residence, he could not be found guilty (as an accomplice) of knowingly attempting to physically harm another. Appellant relies upon *State v. Mills* (1992), 62 Ohio St.3d 357, to support this proposition.

> In *Mills*, the defendant, during the process of robbing a bank, fired a shot that struck the counter in front of two tellers, named, respectively, Johnson and Laster. Id. He then jumped over the counter and hit Johnson in the head with a hard object. Grabbing Lester, he "held a gun to her head, and commanded

-22-

her to open a nearby safe." Id.  A third teller, Katherine Kamphaus, who was standing in the desk area, heard the shot and hid under a desk.  Id.  Appellant was charged with the felonious assault of all three tellers and was found guilty on all three charges.  Id. at 360.

On appeal to the Ohio Supreme Court, Mills asserted, inter alia, that there was insufficient evidence to sustain the convictions for the felonious assault as to all three tellers.  Id. 369.  Ohio's high court disagreed, finding that there was sufficient evidence offered at trial to support the felonious assault convictions with regard to Johnson and Laster.  Id.  Nonetheless, the court reversed the conviction for the alleged felonious assault of Kamphaus, holding:

> "When the initial shot was fired, she [Kamphaus] was standing near a desk area located behind the counter and off to one side.  She was not in the line of fire when the gunmen entered and hid under her desk during the remainder of the robbery.  The evidence is insufficient to support the finding that Mills knowingly attempted to physically harm Kamphaus.  R.C. 2903.11.  Accordingly, we reverse this conviction." Id.

We do not find the holding in *Mills* to have any effect on the outcome of this cause.  In particular, the shots fired at the Lewis residence can be likened to the gunshots fired by Mills at the tellers' counter in the bank, thereby placing any persons therein in the line of fire.  Moreover, and of greater importance, is the fact that the Ohio Supreme Court declined to accept an appeal of a case that is on point with the cause before us.  See *State v. Elko*, 8th Dist. NO. 83541, 2004-Ohio-5209, appeal not allowed, 105 Ohio St.3d 1441.

In *State v. Elko*, the defendant fired shots into the victims' basement glass block window.  Id. at ¶ 3.  The intended victim had his bedroom in that basement directly behind that window.  Id. at ¶ 4.  None of the victims was in the basement at the time and none were injured.  Id. at ¶ 47.  As a result of this incident, Elko was found guilty of felonious assault and improperly discharging a firearm into a habitation.  Id. at ¶ 1.  On appeal, Elko argued that he could not be convicted of felonious assault because he did not cause any physical harm to any of the victims.  Id. at ¶ 47.  The court rejected this argument stating that the evidence demonstrated that the defendant fired a pistol, a deadly weapon, into a glass block window without knowing who could be inside at the time of the shooting, Id at ¶ 53.  The *Elko* court held: "The fact that none of the victims were physically hurt and that none of the bullets penetrated through the glass block window are irrelevant.  Firing a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm. * * * The evidence presented at trial was sufficient to convict the appellant of felonious assault."  Id. at ¶ 54.

As in *Elko*, shots were fired at the Lewis residence by someone who have had no knowledge of who might be inside at the time of the shooting.  One bullet went through the window immediately above the bed in which Daniel Lewis and his spouse were sleeping and ended up in their daughter's closet.  Consequently, sufficient evidence was offered to satisfy R.C. 2903.11(A)(2),

and appellant's second assignment of error is found not well-taken.

ECF Dkt. #11-8 at 8-11.

Although the Ohio appellate court did not cite United States Supreme Court precedent in its decision addressing Petitioner's sufficiency of the evidence claim, the case that the court did identify, *State v. Jenks*, relies upon the standard of review established by the Supreme Court in *Jackson v. Virginia*. ECF Dkt. #11-8 at 8-9, citing 61 Ohio St.3d 259, 574 N.E.2d 492, 494 (1991), citing *Jackson*, 443 U.S. 307. Accordingly, the "relevant question is whether, after reviewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In *Jackson*, the Supreme Court explained that the State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir.), *cert. denied*, 464 U.S. 951, 962, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983). In addition, "[c]ircumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir.2008) (quoting *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir.2000)), *cert. denied*, 130 S.Ct. 1134 (2010).

Section 2903.11(A)(2) of the Ohio Revised Code provides in relevant part:

2903.11 Felonious assault

(A)     No person shall knowingly do either of the following;

(1)     Cause or attempt to cause physical harm to another or to another unborn by means of a deadly weapon or dangerous ordnance.

Ohio Rev. Code § 2903.11(A)(2). The undersigned notes that Petitioner was charged and

-24-

convicted of two counts of complicity to commit felonious assault.  ECF Dkt. #11-1 at 20-31. The undersigned further notes that Petitioner does not further elaborate in his petitions or in his Statement of Issues as to this issue beyond stating that insufficient evidence existed to establish guilt beyond a reasonable doubt with respect to the felonious assault charges.  ECF Dkt. #1, ECF Dkt. #3 at 2, ECF Dkt. #13.  Regardless, the undersigned recommends that the Court find that the Ohio appellate court's determination that sufficient evidence existed with which to convict Petitioner of complicity to commit the felonious assaults was not contrary to or an unreasonable application of *Jackson*.

No person was injured in the instant case and thus, Petitioner was convicted under that part of Ohio Revised Code § 2903.11(A)(2) prohibiting a person from "attempting to cause physical harm" to another by means of a deadly weapon.  Ohio Rev. Code § 2903.11(A)(2). Consequently, the State must prove beyond a reasonable doubt that "the defendant knowingly engaged in some overt act directed toward executing or accomplishing the assault through the use of a deadly weapon."  *Nash v. Eberlin,* No. 06-4059, 258 Fed. App'x 761, 765, 2007 WL 4438008, at **3 (6th Cir. 2007).  "Knowingly," as used in Ohio Revised Code section 2903.11 is defined in Ohio Revised Code section 2901.22(B) as follows:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person had knowledge of circumstances when he is aware that such circumstances probably exist.

Ohio Rev. Code § 2901.22(B). Ohio courts have held that the "[f]iring into the dwelling place of another supports an inference that an assailant acted knowingly."  *State v. Lee*, No. 97APA12-1629, 1998 WL 614608, at *3 (Ohio App. 10th Dist., Sept. 3, 1998), unreported, citing *State v. Gregory*, 90 Ohio App.3d 124, 628 N.E.2d 86 (1993).  The case relied upon by the Ohio appellate court, *State v. Elko*, No. 83641, 2004 WL 2340258, at *7 (Ohio App. 8th Dist. Sept. 30, 2004), unreported, supports this proposition as well, whereby the court found that "firing a pistol into a window, without knowing who could be behind it, satisfies a knowing attempt to cause physical harm."  ECF Dkt. #11-8 at 10-12.

Upon review of the transcript and the Ohio appellate court's determination, the Court should find that the sufficient evidence was presented upon which a rational trier of fact could find Petitioner guilty beyond a reasonable doubt as to complicity to commit felonious assault and the Ohio appellate court's determination was not contrary to or an unreasonable application of the law. Evidence was presented showing that the victim and his wife heard shots fired, a bullet was found inside their home and a dent was found on the victim's vehicle. ECF Dkt. #12-1 at 181-184, 191-196, 281.  Evidence presented showed that the  victim who owned the residence and the vehicle was a police officer who investigated and presented a drug and weapon case against Petitioner to the grand jury and would be providing testimony at his trial.  *Id*. at 196-199.  The prosecution presented evidence that calls were made from Petitioner's cell phone shortly before the shooting and a call was made to a cell phone found near the scene of the shooting which had the DNA of Petitioner's co-defendant on it.  *Id*. at 468; ECF Dkt. #12-2 at 16-20.  The prosecution further presented evidence that Petitioner returned to the scene of the shooting shortly thereafter in a van with the co-defendant and he was arrested there.  *Id*. at 239-240.  Gunshot residue turned up on the windows and doors of the van and on Petitioner's hands.  *Id.* at 396-397, 501-505.

Viewing this evidence in a light most favorable to the prosecution, the undersigned recommends that the Court find that the evidence was not so lacking that no rational trier of fact could have reached a verdict of guilty on the two counts of complicity to commit felonious assault.  Accordingly, the undersigned recommends that the Court find that the Ohio appellate court did not unreasonably apply clearly established federal law or make an unreasonable determination of the facts in light of the evidence presented at trial.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: May 4, 2012                                        _/s/ George J. Limbert_____
                                                         GEORGE J. LIMBERT
                                                         UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).